**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-279-DLB**

**VANO TSIKLAURI**                                                                              **PETITIONER**


**v.**                        **MEMORANDUM OPINION AND ORDER**


**JAMES A. DALEY, et al.**                                                             **RESPONDENTS**

* * * * * * * * * * * * * * * *

## I.    INTRODUCTION

This matter is before the Court on Petitioner Vano Tsiklauri's Petition for Writ of Habeas Corpus (Doc. # 1) and Emergency Motion for Temporary Restraining Order (Doc. # 2).  Respondents[1] filed their Responses[2] (Docs. # 6 and 8).  Petitioner did not file a Reply, and the time to do so has passed.  Accordingly, the matter is now ripe for the Court's review.  For the following reasons, the Court will **deny** the Petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Georgia who entered the United States on or about May 23, 2022 near Arizona.  (Doc. # 1 at 4).  Petitioner was subsequently detained after encountering a Border Patrol Agent near the Yuma, Arizona Border Patrol Sector.  (Doc. # 6-1 at 2).  On May 26, 2022 Petitioner was issued a Notice and Order of Expedited

---

[1]    Petitioner files this action against Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd Lyons, U.S. ICE; Pamela Bondi, former Attorney General of the United States (collectively, the "Federal Respondents"); and James A. Daley, Jailer, Campbell County Detention Center.  (Doc. # 1 at 1).

[2]    Respondent Maydak filed a separate response, arguing that he is not a proper respondent. (Doc. # 8 at 4).

Removal.  (Doc. # 6-2).  Additionally, Petitioner must have claimed to fear persecution or torture from his home country, because he was processed for "Expedited Removal – Credible Fear Referral."  (Doc. # 6-1 at 3).  Petitioner states that while in expedited removal proceedings he filed an Application for Asylum and Withholding of Removal form. (Doc. # 1 at 4).

On June 15, 2022, Petitioner was released on parole with automatic termination after one year.  (Doc. # 6-3).  On September 1, 2022, Petitioner was issued a Notice to Appear ("NTA") (Doc. # 6-4).  Between his release on parole and the issuance of his NTA, Petitioner must have undergone a credible fear screening, as the NTA was issued "after an asylum officer ha[d] found that the [Petitioner] has demonstrated a credible fear of persecution or torture."  (Doc. # 6-4).  Petitioner states that his asylum application remains pending.  (Doc. # 1 at 4).  A review of the Executive Office for Immigration Review's ("EOIR") Automated Case Information, which shows that Petitioner is scheduled for an individual hearing—where an Immigration Judge ("IJ") will review his asylum application— on August 18, 2026 confirms this.  *See* EOIR, *Automated Case Information*, https://acis.eoir.justice.gov/en/caseInformation.

On June 26, 2026, Tsiklauri filed the instant Petition for Writ of Habeas Corpus (Doc. # 1) and Emergency Motion for Temporary Restraining Order (Doc. # 2).  On June 6, 2026, the Court issued an order directing Respondents to respond to the Petition.  (Doc. # 5).  Respondents having filed their Responses (Docs. # 6 and 8), and the time for Petitioner to file his reply having expired, the matter is ripe for the Court's review.

## III.   ANALYSIS

Tsiklauri's Petition alleges that his present detention without an individualized bond hearing violates the Immigration and Nationality Act ("INA") and deprives him of his right to due process under the Fifth Amendment.  (Doc. # 1 at 5).[3]  Respondents argue that Petitioner is properly detained under 8 U.S.C. § 1225(b)(1).  (Doc. # 6 at 1).

### A.   Proper Respondents

Before turning to Tsiklauri's substantive argument, the Court will address Respondent Daley's contention that he is not a suitable respondent.  (Doc. # 8 at 4).

"[T]he federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'"  *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242).  The Supreme Court has held that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."  *Id.* at 447.  Similarly, this Court has held that, where an immigration detainee files a petition for writ of habeas corpus, the jailer is a

---

[3]   Petitioner additionally argues that his Fourth Amendment right was violated when he was arrested without a judicial warrant or probable cause.  (Doc. # 1 at 6).  In the immigration context "an unlawful arrest does not automatically result in suppression of evidence."  *Gabriel v. Hermosillo*, No. 2:25-cv-02594-DGE-GJL, 2026 WL 194233, at *5 (W.D. Wash. Jan. 26, 2026); *see also INS v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984) ("We hold that evidence derived from [an unlawful arrest] need not be suppressed in an [immigration] civil deportation proceeding.").  The Sixth Circuit acknowledged that *Lopez-Mendoza* established that a defendant, including his identity or body, is properly before a court "regardless of whether this information was obtained in violation of his Fourth Amendment rights."  *United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005).  Thus, "the 'body' or 'identity' of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."  *Lopez-Mendoza*, 468 U.S. at 1039.  Accordingly, the Court need not address the substantive issue of whether Defendant's Fourth Amendment rights were violated because even if they were, he is not entitled to habeas relief on that basis.

3

proper respondent. *M.T.B. v. Byers*, No. 2:24-cv-082-DCR, 2024 WL 3881843, at *1 (E.D. Ky. Aug. 20, 2024). Indeed, "as the person who has 'day-to-day control over the facility in which [Tsiklauri] is being detained,' [Daley] is [Tsiklauri's] custodian." *Id.* (quoting *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)).

Tsiklauri's is presently detained at the Campbell County Detention Center. (Doc. # 1 at 1; Doc. # 8 at 1–2). Daley, as the elected Jailer, "oversee[s] and operate[s]" the Campbell County Detention Center. (Doc. # 8 at 1). Therefore, Daley is a proper respondent to Tsiklauri's Petition. *See Padilla*, 542 U.S. at 447; *Byers*, 2024 WL 3881843, at *1. Accordingly, the Court will deny Daley's request to dismiss him as a respondent.

Having concluded that Daley is a proper respondent, the Court turns to the substantive arguments Tsiklauri raises in his Petition.

**B. Petitioner is mandatorily detained pursuant to § 1225(b)(1)(B)(ii)**

Tsiklauri argues that he is detained under 8 U.S.C. § 1226(a), and therefore he is entitled to a bond hearing. (Doc. # 1 at 5). Respondents disagree, arguing that because Petitioner was subject to expedited removal proceedings, he is detained pursuant to § 1225(b)(1)(B)(ii).

### 1. Relevant framework

To implement its immigration policy, the Government "must be able to decide" who may enter the country. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id*. 8 U.S.C. § 1225 provides a roadmap for that process.

When an alien presents themselves at the border of the United States, they are deemed an applicant for admission[4] and must be inspected by an immigration officer. § 1225(a)(1), (3). Inspection by an immigration officer lasts only "a few seconds" and requires the officer to "examine documents, run basic lookout queries, and ask pertinent questions to determine admissibility and issue relevant entry documents." Library of Congress, *Expedited Removal of Aliens: Legal Framework*, Inspection (October 8, 2019) https://www.congress.gov/crs-product/R45314#ifn84 (last visited June 23, 2026) (internal quotations omitted). If that immigration officer finds discrepancies in the alien's application or travel documents, the alien is referred to a secondary inspection for further determination on whether the alien is admissible. *Id*. An alien may be deemed inadmissible due to "fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287. If the alien is deemed inadmissible, the immigration officer will order the alien removed and placed into expedited removal proceedings. § 1225(b)(1)(A)(i); *see also* United States Department of Homeland Security, *I-860 Notice and Order of Expedited Removal*: *Determination of Inadmissibility*, Sample, https://www.ice.gov/doclib/detention/checkin/ER_I_860.pdf (last visited June 23, 2026).

However, if the alien indicates a fear of persecution or intent to apply for asylum, the immigration officer will refer the alien to an interview by an asylum officer. § 1225(b)(1)(A)(ii). This is often called a credible fear interview or credible fear screening. *See* U.S. Citizenship and Immigration Services ("USCIS"), *Questions and Answers: Credible Fear Screening,* https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening (last accessed August 6,

---

4       Pursuant to § 1225(a)(1), an applicant for admission is defined as "an alien present in the United States who has not been admitted or who arrives in the United States[.]"

2026).   If that immigration officer determines that the alien has a credible fear of persecution, then the alien is detained and transferred from expedited to full removal proceedings for further consideration of his asylum claim.  § 1225(b)(1)(B)(ii).  Detention during this time is mandatory pending "further consideration of the application for asylum." *Id*.

### 2.  Application to Tsiklauri's case

Compare the above to the present case.  Here, Petitioner entered the United States on May 23, 2022, near the Yuma, Arizona Border where he then encountered a Border Patrol officer.  (Doc. # 6-1 at 2).  Based on the record, Petitioner entered the United States by crossing the border through Mexico, rather than through an official port of entry.  (*See id*.) (noting that Petitioner "unlawfully entered the United States of America from Mexico, at a time and place other than designated by the Secretary of the Department of Homeland Security of the United States").  Nevertheless, after encountering the Border Patrol officer, Petitioner was officially processed and deemed inadmissible because on May 26, 2022 he was issued an I-860 Notice and Order of Expedited Removal.  (Doc. # 6-2).  The Notice indicates that Petitioner was deemed inadmissible due to his lack of valid entry documents.  (*Id*. at 1).  Accordingly, Petitioner was placed into expedited removal proceedings.  (*Id*.).

However, Petitioner must have indicated to the immigration officer that he intended to apply for asylum or had a fear of persecution because he was processed as "Expedited Removal - Credible Fear Referral."  (Doc. # 6-1 at 3).  Petitioner was then paroled into the country for a period of one year beginning June 15, 2022.  (Doc. # 6-3).  At some point after his release on parole, Petitioner attended a credible fear screening, wherein

6

the immigration officer concluded that Petitioner had a credible fear.  The Court comes to this conclusion based on the NTA that was issued to Petitioner on September 1, 2022, wherein it stated that the NTA was being issued after an asylum officer had determined that Petitioner "demonstrated a credible fear of persecution or torture."  (Doc. # 6-4 at 1); *see also* USCIS, *Questions and Answers: Credible Fear Screening* https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening (last accessed August 6, 2026) (if an asylum officer finds that an alien has a credible fear, they may either "retain and consider [the] application and also consider [the alien's] eligibility for withholding of removal" or, they may "[i]ssue a Notice to Appear before an IJ for consideration of [the alien's] asylum, withholding of removal, and CAT protection claims.").  On June 3, 2026, Petitioner was issued an I-200 Warrant for Arrest of Alien.  (Doc. # 6-5).

Because Petitioner was determined to have a credible fear, his asylum claim "is now being considered in the context of the 'full removal proceedings' that the government has initiated against him." *Brito-Goncalvez v. Field Office Director*, No. 1:26-cv-94, 2026 WL 1077448, at *3 (S.D. Oh. Apr. 21, 2026) (quoting *Matter of M-S*, 27 I&N Dec. 509, 515 (A.G. 2019)).  Pursuant to § 1225(b)(1)(B)(ii), "if the [immigration] officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien *shall be detained* for further consideration of the application for asylum" (emphasis added).

Numerous courts, including the Supreme Court in *Jennings*, have concluded that the plain reading of the phrase "shall be detained" in § 1225(b)(1)(B)(ii) requires mandatory detention of the noncitizen until their application for asylum has been fully

7

adjudicated. *See Jennings*, 583 U.S. at 599 ("The plain meaning of [§ 1225(b)(1)(B)(ii)] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum"); *Pambukhchyan v. United States Immig. & Customs Enf't*, No. 26-0136, 2026 WL 980250, at *3 (W.D. La. Mar. 23, 2026) ("Plainly, Section 1225 does not authorize release on bond. . . . The language 'shall be detained' is clear."); *Paredes Padilla v. Galovich*, No. 25-cv-865-jdp, 2025 WL 3640960, at *3 (W.D. Wis. Dec. 16, 2025) (noting that *Jennings* "holds that once a non-citizen is transferred from expedited to full removal proceedings for consideration of an asylum claim, § 1225(b)(1)(B)(ii) mandates detention for the duration of the asylum proceedings."); *Brito-Goncalvez*, 2026 WL 1077448, at *3 ("And under [§ 1225(b)(1)(B)(ii)], the government has the authority to, indeed is required to, detain [the petitioner.]"); *see also Matter of M-S*, 27 I&N at 515 (aliens transferred from expedited to full proceedings after establishing credible fear "remain ineligible for bond[.]").

Because the immigration officer determined that Petitioner had a credible fear of persecution, under § 1225(b)(1)(B)(ii), he shall be detained for further consideration of his asylum application. And because Petitioner's application asylum is still pending, Respondents are free to detain him for the pendency of the consideration of his application.

### a. Petitioner's parole

While not argued by Petitioner, the Court will briefly address the issue of Petitioner's parole.

The Supreme Court in *Jennings* held that an alien governed by § 1225(b)(1)(B)(ii) may "be temporarily released on parole[.]" *Jennings*, 583 U.S. at 288; *see also Matter of*

*M-S*, 27 I&N at 510 ("[U]nless paroled, an alien must be detained until his asylum claim is adjudicated."). When Petitioner entered this country, he was paroled in pursuant to 8 U.S.C. § 1182(d)(5)(A) for a period of one year. Accordingly, on June 15, 2023, Petitioner's parole automatically expired. (*See* Doc. # 6-3). There is nothing in the record that suggests that ICE granted Petitioner an extension of his parole. Therefore, because Petitioner is no longer on parole, the parole exception cannot possibly apply to him. *See Brito-Goncalvez*, 2026 WL 1077448, at *3 (concluding that the petitioner's one year parole into the country, which had since expired, did not change the fact that he was now mandatorily detained pursuant to § 1225(b)(1)(B)(ii)); *Paredes Padilla*, 2025 WL 3640960, at *3 (concluding that the petitioner was mandatorily detained pursuant to § 1225(b)(1)(B)(ii), despite his previous release on bond).

Petitioner is being held under § 1225(b)(1)(B)(ii), not § 1226(a) as he argues. Therefore, he is not entitled to a bond hearing. See Patricio-Morales v. Ducote, No. 26-0877, 2026 WL 1459050 at *2 (W.D. La. Apr. 29, 2026) ("Plainly, [§ 1225(b)(1)(B)(ii)] does not authorize release on bond. . . . Petitioner is (and was) not statutorily entitled to bond.")

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)    Tsiklauri's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED**;

(2)    Tsiklauri's Emergency Motion for Temporary Restraining Order (Doc. # 2) is **DENIED**; and

(3)    This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 7th day of August, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-279 MOO re habeas petition.docx